# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WHARTON LH LP,<br><br>       Plaintiff,<br><br>v.<br><br>TRI-COASTAL DESIGN SERVICES, LLC, TRI-COASTAL DESIGN GROUP, INC., TRI-COASTAL DESIGN-CHARACTER LICENSE, LLC, LOOP DESIGN CO., MARVIN STUTZ, MICHAEL MASTRANGELO, DENNIS MASTRANGELO, TODD SOLOMON, JOHN/JANE DOES 1-10 (fictitious persons), and ABC CORP. 1-10 (fictitious entities),<br><br>       Defendants. | HON. JOHN MICHAEL VAZQUEZ, U.S.D.J.<br><br>Civil Action No. 2:20-cv-18008-JMV-JBC<br><br><br><br><br><br><br><br>(Document Electronically Filed) |

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

On the Brief:

C. John DeSimone, III, Esq.
Stephen R. Catanzaro, Esq.
DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ 07054
(973) 966-6300
*Attorneys for Plaintiff Wharton LH LP*

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................1

STATEMENT OF ALLEGATIONS .......................................................3

ARGUMENT ........................................................................................10

    I.      The Motion to Dismiss Improperly Relies on Numerous Factual Claims and Documents That Are Outside of the FAC.......................11

    II.    Plaintiff Adequately Alleges a Fraudulent Conveyance Claim ..........14

    III.   Plaintiff Adequately Alleges a Fraud Claim .......................................23

    IV.   Plaintiff Adequately Alleges an Unjust Enrichment Claim ................28

    V.    Plaintiff Adequately Alleges a Consumer Fraud Claim......................30

    VI.   Plaintiff Adequately Alleges a Civil Conspiracy Claim ....................33

CONCLUSION ......................................................................................36

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahn v. Cigna Health & Life Insurance Co.*,
No. 19-07141, 2019 WL 5304628 (D.N.J. Oct. 21, 2019) .................................12

*All the Way Towing, LLC v. Bucks County International, Inc.*,
236 N.J. 431 (2019) ....................................................................................32, 35

*Angrisani v. Capital Access Network, Inc.*,
175 F. App'x 554 (3d Cir. 2006) ......................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................10, 13

*Associated General Contractors of California, Inc. v. California
State Council of Carpenters*,
459 U.S. 519 (1983).........................................................................................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................13

*In re Burlington Coat Factory Securities Litigation*,
114 F.3d 1410 (3d Cir. 1997) ....................................................................10, 17

*Cacoilo v. Sherwin-Williams Co.*,
No. 11-7039, 2012 WL 2459409 (D.N.J. June 25, 2012) ....................................1

*City of Cambridge Retirement Systems v. Altisource Asset
Management Corp.*,
908 F.3d 872 (3d Cir. 2018) ............................................................................10

*Debiasa v. Donnelly*,
No. 16-552, 2016 WL 4620370 (D.N.J. Sept. 6, 2016)...................14, 19, 22, 23

*Dzielak v. Whirlpool Corp.*,
26 F. Supp. 3d 304 (D.N.J. 2014)....................................................................28

*Gennari v. Weichert Co. Realtors*,
288 N.J. Super. 504 (App. Div. 1996), *aff'd*, 148 N.J. 582 (1997) ...................31

*Gilchinsky v. National Westminster Bank New Jersey*,
159 N.J. 463 (1999) ...................................................................................14

*Grudkowski v. Foremost Insurance Co.*,
556 F. App'x 165 (3d Cir. 2014) ................................................................29

*Hampton Hosp. v. Bresan*,
288 N.J. Super. 372 (App. Div. 1996) ........................................................31

*IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*,
No. 07-1076, 2009 WL 5205968 (D.N.J. Dec. 28, 2009) ..................................32

*King's Choice Neckwear, Inc. v. Fedex Corp.*,
No. 07-0275, 2007 WL 4554220 (D.N.J. Dec. 21, 2007) ..................................35

*Mayer v. Belichick*,
605 F.3d 225 (3d Cir. 2010) ......................................................12, 19, 26, 27

*Mizrahi v. Checkolite International, Inc.*,
No. 14-7987, 2017 WL 111919 (D.N.J. Jan. 10, 2017) ..............................15

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
331 F.3d 406 (3d Cir. 2003) ......................................................................34

*Morrow v. Balaski*,
719 F.3d 160 (3d Cir. 2013) ......................................................................12

*MSKP Oak Grove, LLC v. Venuto*,
No. 19-3372, 2020 WL 7496512 (3d Cir. Dec. 21, 2020) ..........................17

*Premier Health Associates, LLC v. Medical Technology Solutions*,
No. 17-331, 2018 WL 4043289 (D.N.J. Aug. 24, 2018) ............................33

*Reckitt Benckiser LLC v. Cotiviti, LLC*,
No. 16-729, 2016 WL 5791410 (D.N.J. Oct. 3, 2016) ...............................33

*United States v. Estate of Elson*,
421 F. Supp. 3d 1 (D.N.J. 2019) ...............................................................12

*USI International, Inc. v. Festo Didactic, Inc.*,
No. 15-8451, 2016 WL 4487858 (D.N.J. Aug. 24, 2016) ...........................29

*Weske v. Samsung Electronics, America, Inc.*,
    42 F. Supp. 3d 599 (D.N.J. 2014) ......................................................................26

*Wilson v. Parker*,
    No. 18-2954, 2018 WL 6696783 (D.N.J. Dec. 20, 2018) ...........................19, 22

*World Express & Connection, Inc. v. Crocus Investments, LLC*,
    No. 15-8126, 2020 WL 5088633 (D.N.J. Aug. 28, 2020)..................................35

**Statutes**

N.J. Stat. Ann. § 25:2-20 *et seq.* ...............................................................................14

N.J. Stat. Ann. § 25:2-21 .........................................................................................15

N.J. Stat. Ann. § 25:2-22 ...................................................................................18, 20

N.J. Stat. Ann. § 25:2-25 ...................................................................................14, 20

N.J. Stat. Ann. § 25:2-26 ...................................................................................17, 21

N.J. Stat. Ann. § 56:8-1 ...........................................................................................32

N.J. Stat. Ann. § 56:8-2 ...................................................................................31, 33

**Regulations**

26 C.F.R. § 1.856-10....................................................................................................29

**Rules**

Fed. R. Civ. P. 9 .......................................................................................................10

Fed. R. Civ. P. 12 ...........................................................................................1, 10, 11, 12

## INTRODUCTION

In another transparent bid for delay, Defendants have moved to dismiss the First Amended Complaint.  (ECF No. 5.)  Much like their notice of removal,[1] Defendants' motion to dismiss is facially defective and nothing more than a transparent attempt to hinder Plaintiff's ability to (i) prove Defendants' fraudulent conduct and improper transfers to themselves and others and (ii) collect on the consent judgment against Tri-Coastal Design Services, LLC ("Tri-Coastal Services").

In particular, rather than focus their arguments on the actual allegations in the First Amended Complaint or matters of law, Defendants devote most of their brief to presenting their own claimed facts, which, no surprise, are at odds with the allegations in the First Amended Complaint.  Without any regard to the procedural requirements of Rule 12(b)(6), Defendants have cherry-picked documents from their own files and made numerous factual assertions based on nothing more than their own say-so.  In other words, this motion does not give Plaintiff Wharton LH LP's

---

[1] As Plaintiff conclusively demonstrated in its motion to remand, Defendants are seeking to dismiss a case that was improperly removed from the Superior Court of New Jersey.  (ECF No. 6.)  Most notably, the "forum defendant rule" bars removal of this action because nine of ten of the defendants are self-described citizens of New Jersey.  (*Id.* at 6-7.)  Because the motion to remand concerns the Court's jurisdiction, it should be decided before this motion to dismiss.  *Cacoilo v. Sherwin-Williams Co.*, No. 11-7039, 2012 WL 2459409, at *1 (D.N.J. June 25, 2012).  If the motion to remand is granted then this motion to dismiss should not be reached by the Court.

("Plaintiff") allegations the inferences they deserve, nor is this motion based on solid legal theories; instead, the motion is based on a factual argument derived from Defendants' own claimed facts that are self-serving and untested in discovery. As demonstrated below, these extraneous factual assertions must be disregarded on a motion to dismiss. And once the irrelevant materials are stripped away, it is apparent that the motion should be denied because Defendants have failed to identify any deficiencies in Plaintiff's claims that might support dismissal.

## PROCEDURAL HISTORY

As described in Plaintiff's motion to remand, Defendants' conduct has led to three separate lawsuits. (ECF No. 6-1 at 23.) First, on May 1, 2020, Plaintiff commenced an action for damages against Defendant Tri-Coastal Services in the Superior Court of New Jersey (later, Defendant Marvin Stutz was joined to that action) (the "Breach Litigation"). (ECF No. 1 ¶ 52.) Second, on July 1, 2020, Plaintiff filed a separate landlord-tenant action (the "Eviction Litigation") against Tri-Coastal Services in the Superior Court of New Jersey. (*Id.* ¶ 57.) Third, on November 1, 2020, Plaintiff filed this lawsuit relating to Defendants' fraudulent conduct (the "Fraud Litigation") in the Superior Court of New Jersey. (ECF No. 6-2 ¶ 6.) None of these matters include federal claims.

Based in part on some of the limited discovery that has been taken in the Breach Litigation (which remains ongoing),[2] Plaintiff filed the First Amended Complaint in the Fraud Litigation on November 25, 2020 ("FAC").  (ECF No. 1.)  On December 3, 2020, Defendants removed this case from the Superior Court of New Jersey to federal court claiming diversity jurisdiction.  (ECF No. 2.)   On December 16, 2020, Defendants filed this motion to dismiss.  (ECF No. 5.)   On December 24, 2020, Plaintiff filed a notice of motion to remand, requesting that the Court remand this matter back to the Superior Court of New Jersey.  (ECF No. 6.) The remand motion is pending as of the time of the writing of this brief.  No discovery has taken place in the Fraud Litigation.  (DeSimone Decl. ¶ 6.)

## STATEMENT OF ALLEGATIONS

In the FAC, over the course of 28 pages and 156 paragraphs, Plaintiff details the fraudulent efforts by Defendants to evade the debts incurred by Tri-Coastal Services to Plaintiff.  (ECF No. 1.)  As set forth in the FAC, Defendants' efforts spanned the better part of a year, from the fall of 2019 through to and including October 2020 (and perhaps since).  (*Id.* ¶¶ 30, 35.)   The FAC explains that Defendants' efforts consisted of a series of fraudulent transfers that systematically

---

[2] Discovery in the Breach Litigation has, however, been hampered because Defendants Tri-Coastal Services and Marvin Stutz have resisted providing discovery, requiring Plaintiff to file multiple motions to compel.  Plaintiff prevailed on its first, and its second is pending.  (DeSimone Decl. ¶¶ 4–5. )

depleted Tri-Coastal Services of its assets and revenue, rendering it judgment proof and unable to pay its obligations to Plaintiff.  (*Id.* ¶ 36.)

The FAC spans a greater time period and covers numerous transfers, misrepresentations, material omissions, and other misconduct on the part of Defendants, than as suggested in the motion to dismiss.  Furthermore, that Tri-Coastal Services is indebted to Plaintiff has already been confirmed by a Consent Judgment provided by Tri-Coastal Services to Plaintiff in the amount of $723,459.46 (the "Consent Judgment"), which represents part of what is expected to be a much larger final judgment against all Defendants.  (*Id.* ¶ 55.)  In the interest of economy, Plaintiff will not repeat all of its allegations here and will address them in detail, where necessary, in the context of its claims for relief.

In brief, Tri-Coastal Services entered into a lease agreement for 180,000 square feet of commercial space in Wharton, New Jersey in January 2010.  (*Id.* ¶ 26.) Plaintiff later acquired the original landlord's interest in the lease.  (*Id.* ¶ 29.)  In the fall of 2019, Tri-Coastal Services and certain other of the Defendants approached Plaintiff asking to amend the lease.  (*Id.* ¶ 30.)  Plaintiff agreed to renegotiate certain terms in the lease based on what are now understood to have been misrepresentations and material omissions by Tri-Coastal Services and other Defendants.  (*Id.* ¶¶ 32, 140.)  Despite the modifications to the lease, beginning in February 2020, which was the month following the execution of the amended lease agreement, Tri-Coastal

4

Services defaulted on its rent obligations. (*Id.* ¶ 35.) It defaulted again in March 2020 and would remain in default until it vacated the property on October 1, 2020. (*Id.*)

Recognizing Tri-Coastal Services was in default of the lease and Plaintiff had every right to seek judicial intervention, several defendant entities and individuals worked together by making numerous material misrepresentations and omissions to Plaintiff. (*Id.* ¶¶ 44-50.) This includes five New Jersey limited liability companies and corporations that were operated as alter egos of Tri-Coastal Services (the "Company Defendants") and four persons who held various management titles and ownership interests in the Company Defendants (the "Individual Defendants"). (*Id.* ¶¶ 2–12, 22.)

For example, certain defendants misrepresented to Plaintiff that Tri-Coastal Services would resume paying rent and would pay its rent arrears. (*Id.* ¶ 47.) These material misrepresentations and omissions were intended to convince Plaintiff that Tri-Coastal Services was acting in good faith, would pay the rent it owed, and would not seek to subvert the lease. (*Id.* ¶ 48.) Further, these material misrepresentations and omissions were intended to cause Plaintiff to delay seeking Tri-Coastal Services' eviction. (*Id.*)

The FAC recites these material fraudulent misrepresentations and omissions with particularity. (*Id.* ¶¶ 44–51). By way of example, the FAC alleges:

47.     Tri-Coastal Services, Stutz and D. Mastrangelo, with the approval and participation of all Defendants, also made various promises during February 2020 through June 2020, promising that they would ensure Wharton was paid for the rent and other charges Tri-Coastal owes under the Lease.  By way of additional example and not of limitation:

> a.) They individually and/or collectively repeatedly represented that Tri-Coastal Services' business difficulties were being caused by government to government trade disputes with China, and that therefore these business difficulties were only temporary in nature;

> b.) They individually and/or collectively represented that Defendants had arranged for outside investors to provide financing to help Tri-Coastal Services pay rent and its other obligations to Wharton; and,

> c.) They individually and/or collectively repeatedly represented that Tri-Coastal Services had applied for a government loan to provide financing to help Tri-Coastal Services pay rent and its other obligations to Wharton.

50.     Defendants desired that Wharton refrain from commencing suit so that, among other reasons (a) Defendants could continue to operate and derive revenue during the COVID-19 pandemic – revenue of which Defendants had no intention of using to repay Wharton; and (b) Defendants would have additional time to sell off and/or transfer Tri-Coastal Services' assets, and otherwise work to render Tri-Coastal Services judgment-proof.

(*Id.* ¶¶ 47, 50).

Throughout this entire period, the Individual Defendants and Company Defendants also worked together to funnel revenue and assets away from Tri-Coastal Services in a concerted effort to render the company judgment proof.  (*Id.* ¶ 36.) Their scheme had several components.

6

First, the Company Defendants used the leasehold in order to operate their own businesses and collect revenue and income while diverting those opportunities and revenue away from Tri-Coastal Services.  (*Id.* ¶¶ 42–43.)  Many of the material misrepresentations and omissions were intended to placate and put at ease Plaintiff, so as to cause Plaintiff not to seek to recapture the leasehold.  (*Id.* ¶ 45.)  None of the revenue obtained from using the leasehold was shared with Tri-Coastal Services or remitted to Plaintiff.  (*Id.* ¶¶ 42–43, 83.)

Second, Defendants transferred revenue, assets, and business opportunities belonging to Tri-Coastal Services to the other Defendants without receiving anything of value in return.  (*Id.* ¶¶ 79–84.)  This includes the revenue that Tri-Coastal Services could and should have used to pay rent and other obligations to Plaintiff.

And third, the transfers culminated in a purported asset sale to the Israel Discount Bank of New York ("IDBNY"), which in part netted personal benefits to several of the Individual Defendants such as releases of mortgages over their personal property.  (*Id.* ¶¶ 69–71, 114–15.)[3]  However, even in that purported asset sale, the FAC alleges that by the sale's terms, there were numerous excluded assets

---

[3] In the ultimate act of duplicity, defendants Tri-Coastal Services and Marvin Stutz waited until a few days before executing the Consent Judgment to reveal to Plaintiff, for the first time, that IDBNY had supposedly already taken ownership of Tri-Coastal Services' assets.  (ECF No. 1 ¶¶ 65–66, 71.)

that Defendants have likewise misrepresented to Plaintiff were sold to IDBNY but were instead transferred improperly to avoid Tri-Coastal Services' obligation to Plaintiff.  (*Id.* ¶¶ 74–76).  Defendants also retained certain "Soft Assets" which they likewise stripped from Tri-Coastal Services.  (*Id.* ¶ 76).

Among other things, the FAC alleges:

79.    . . . Tri-Coastal Services, with the approval and participation of Defendants, and without receiving value in return, transferred assets, revenue, and other things of value, to Defendants, thereby minimizing the assets of Tri-Coastal Services from Wharton's ability to collect.

80.    Upon information and belief, Tri-Coastal Services began, at least as early as the fall of 2019, with the approval and participation of Defendants, to accelerate the shift in revenue, assets, and other things of value to the rest of the Defendants, without receiving value in return. Such transfers were done in a concealed manner, and with knowledge that Tri-Coastal Services was experiencing financial hardship such that it could be subject to suit and judgment in favor of Wharton.

81.    Tri-Coastal Services, with the approval and participation of Defendants, undertook the foregoing in an attempt to minimize Tri-Coastal Services' assets that would be available to Wharton for the planned and actual unpaid rental obligations referenced in the Breach Litigation.

84.    Upon information and belief, Tri-Coastal Services, with the approval and participation of Defendants, (a) transferred revenue, assets, and other things of value to the Company Defendants and Individual Defendants (or for their benefit) and/or (b) transferred revenue, assets, and other things of value to the Fictitious Defendants (or for their benefit).  Tri-Coastal Services did not receive value for such transfers.

85.    At the time of such transfers, Defendants were aware of Tri-Coastal Services' unmet financial obligation to Wharton.

86.    At the time of such transfers, Defendants were aware that Tri-Coastal Services' conduct was for the purpose of defrauding Wharton.

87. Defendants, working together and separately for a shared goal and purpose, engaged in, directed, and/or implemented, a series of financial and other transactions designed to divert, transfer, and assign revenue, assets and other things of value away from Tri-Coastal Services for the benefit of the remaining Company Defendants, the Individual Defendants and their families, the Fictitious Defendants, and others presently unknown. Tri-Coastal Services did not receive reasonably equivalent value for such diversions, transfers, and/or assigns.

(*Id.* ¶¶ 79–81, 84–87).   The FAC also alleges that Defendants have been commingling assets to create the illusion that Tri-Coastal Services is insolvent and/or defunct.  (*Id.* ¶¶ 89–91).

Lastly, the FAC alleges that Defendants have created new entities and involved other individuals—which are presently unknown and pled as "Fictitious Defendants"—so as to continue in business capturing revenue for these new entities and individuals that should otherwise have been booked to Tri-Coastal Services and available to pay Plaintiff.  (*Id.* ¶¶ 13, 14, 84, 103, 131.)  The diverted, transferred, and assigned assets and other things of value from Tri-Coastal Services that benefit(ed) Defendants are rightfully the property of Plaintiff, and Plaintiff is entitled to a disgorgement of the same from Defendants.

The entirety of the FAC sets forth in great detail how Defendants' scheme proceeded and the foregoing represents only the briefest summary of it.

9

## ARGUMENT

When deciding if a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). The complaint must "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Allegations of fraud are also governed by Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Courts are, however, sensitive to cases such as this where sophisticated parties have attempted to conceal details of their fraud. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). When relevant factual information is "peculiarly within the defendant's knowledge or control," the requirements of Rule 9(b) are relaxed. *Id.*

In this case, Plaintiff provided detailed factual allegations that support plausible claims for fraudulent conveyance, fraud, unjust enrichment, consumer fraud, and civil conspiracy.  Defendants' approach to these allegations is to dispute them, but that is precisely what Defendants are not allowed to do in a motion to dismiss and one of the reasons why their motion fails.  As demonstrated below, Defendants have not identified any errors or omissions in the FAC that would justify dismissal under Rule 12(b)(6).

## I.    The Motion to Dismiss Improperly Relies on Numerous Factual Claims and Documents That Are Outside of the FAC

Before addressing each of Plaintiff's claims for relief, it bears noting that throughout their motion, Defendants repeatedly refer to and rely on extraneous factual assertions that are nowhere in the FAC.  (*E.g.*, ECF No. 5-1 at 2–7.)  In several instances, Defendants goes so far as to attach cherry-picked documents that were not cited or discussed in the FAC.[4]  Defendants do not try to hide this fact and, indeed, freely admit they are offering "missing facts" that, they submit, should be considered on a motion to dismiss.  (*Id.* at 23.)

---

[4] The added irony here is, as noted above, that Defendants are resisting providing discovery in the pending Breach Litigation (DeSimone Decl. ¶¶ 4–5), claiming, in part, that various documents and data are supposedly inaccessible.  That they come forward in this motion before a different court with self-serving documents that were apparently "accessible" is inconsistent with those claims and completely lacking in credibility.

Defendants are wrong.  It is black-letter that law that on a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 225, 230 (3d Cir. 2010).[5]  Defendants concede their factual assertions are outside the FAC.  Defendants correctly do not argue that any of the "missing facts" fit into any of the above-identified exceptions such as matters of public record.  The "missing facts" do not qualify for any of the exceptions when, among other things, Plaintiff disputes that the factual statements and documents referenced in the motion to dismiss are authentic or tell the whole story.

Moreover, the few cases that Defendants cite in defense of their "missing facts" are irrelevant.  For example, they repeatedly cite *Morrow v. Balaski*, 719 F.3d

---

[5] When presented with extraneous facts, the Court also has discretion to covert a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d). The Court should not exercise that discretion here because this case is in its infancy and Plaintiff has not had the benefit of discovery in this case. *See United States v. Estate of Elson*, 421 F. Supp. 3d 1, 4–5 (D.N.J. 2019) (denying request to convert motion to dismiss because a motion for summary judgment was "premature" and "best considered at the close of fact discovery"); *Ahn v. Cigna Health & Life Ins. Co.*, No. 19-07141, 2019 WL 5304628, at *3 (D.N.J. Oct. 21, 2019) ("[A] motion should not be converted when little or no discovery has occurred." (internal quotation marks and citation omitted)).  If this matter were to be converted into a motion for summary judgment, Plaintiff should first be given an opportunity to take discovery and expand the record with its own facts that are outside of the allegations in the FAC. Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

160, 165 (3d Cir. 2013), for the undisputed proposition that a court need not accept unsupported conclusions, unwarranted inferences, or legal conclusions on a motion to dismiss.[6]  This rule does not grant Defendants carte blanche to rewrite the FAC based on their own view of the facts and, in any event, it is entirely inapplicable here because Plaintiff has offered specific factual allegations to support its claims for relief.  Similarly, Defendants cite *pro se* prisoner cases that predate *Iqbal* and *Twombly* and summarily dismissed claims when "the factual scenario described is fanciful or delusional."  (ECF No. 5-1 at 9 (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995)).)  There is nothing fanciful or delusional about Plaintiff's claims here, which are based on detailed factual allegations.

Accordingly, the Court should limit its review to the four corners of the FAC and disregard arguments that rely on disputed factual assertions and Defendants' "missing facts."

---

[6] Defendants also cite pre-*Iqbal* and *Twombly* precedent to cryptically argue that the Court does not need to assume that Plaintiff can provide facts "that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  It is an absolutely mystery what "non-alleged" facts Defendants have in mind.

## II.   Plaintiff Adequately Alleges a Fraudulent Conveyance Claim

In Count 1, Plaintiff alleged that Defendants transferred revenue and assets in a manner designed to frustrate Plaintiff's ability to collect on Tri-Coastal Services debts to Plaintiff, including but not limited to the Consent Judgment.  (ECF No. 1 ¶¶ 120–38.)  The Count incorporates all prior allegations in the FAC.  (*Id.* ¶ 120.)  This is a classic fraudulent conveyance and plain violation of the New Jersey Uniform Fraudulent Transfer Act ("NJUFTA"), N.J. Stat. Ann. § 25:2-20 *et seq.*, which was enacted to "prevent a debtor from placing his or her property beyond a creditor's reach" and "deliberately cheat a creditor by removing his property from 'the jaws of execution.'"  *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 475 (1999) (quoting *Klein v. Rossi*, 251 F. Supp. 1, 2 (E.D.N.Y. 1996)).

Under the NJUFTA, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor … if the debtor made the transfer or incurred the obligation … [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  N.J. Stat. Ann. § 25:2-25(a).  This type of fraudulent conveyance claim involves two elements.  "The first is whether the debtor or person making the conveyance has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance ....  The second is whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor."  *Debiasa*

14

*v. Donnelly*, No. 16-552, 2016 WL 4620370, at \*2 (D.N.J. Sept. 6, 2016) (quoting *Glichinsky*, 159 N.J. at 475).  Both elements were adequately pled here.

To begin with, Plaintiff is a creditor of Tri-Coastal Services (and Tri-Coastal Services is a debtor of Plaintiff) because Tri-Coastal Services entered into the lease, failed to pay the amounts due and otherwise to honor various terms of the lease such as the duty to maintain and repair the property, and agreed to the Consent Judgment for $723,459.46.  (ECF No. 1 ¶¶ 55-56, 121, 123-26); *see also* N.J. Stat. Ann. § 25:2-21 (defining "creditor" and "debtor").  Beyond Tri-Coastal Services, the remaining Defendants are also liable under the NJUFTA because, as alleged, they were aware of Tri-Coastal Services' debts to Plaintiff, including the Consent Judgment, failed to observe corporate formalities and are alter egos of one another, and acted in concert to frustrate Plaintiff's efforts to collect on its claims.  (*Id.* ¶¶ 22, 64, 79, 123–27, 129); *see also Mizrahi v. Checkolite Int'l, Inc.*, No. 14-7987, 2017 WL 111919, at \*3 (D.N.J. Jan. 10, 2017) ("[I]t is well-settled law that liability can attach under the NJUFTA to a party that is not the debtor.").

Together, Defendants have through various means transferred revenue, assets and business opportunities that would have been available to satisfy Tri-Coastal Services debts to Plaintiff, including the Consent Judgment.  These transfers were done "with the approval and participation of all Defendants" and placed the assets beyond Plaintiff's reach.  (ECF No. 1 ¶¶ 64, 84.)

These fraudulent transfers culminated when Tri-Coastal Services, in concert with the other Defendants, transferred some of its then-remaining assets to IDBNY during the pendency of the Initial Litigation.  (*Id.* ¶¶ 61–74.)  In August 2020, IDBNY apparently took ownership of the assets pursuant to a loan agreement and sold the assets to a third-party for approximately $1.7 million.  (*Id.* ¶¶ 69–71.)  Defendants hid the loan agreement with IDBNY and transfer of assets from Plaintiff until September 2020, just a few days before the entry of the Consent Judgment.  (*Id.* ¶¶ 62, 65.)  Defendants also misrepresented to Plaintiff that Tri-Coastal Services was defunct and without assets following the transfer when, according to the bill of sale, certain assets were expressly excluded from the transfer.  (*Id.* ¶¶ 74–77.)

Make no mistake, however, the FAC does not solely focus on the IDBNY transfer as suggested by Defendants in this motion.  The FAC clearly states that Defendants also caused Tri-Coastal Services to transfer revenue, assets, and other things of value to the Company Defendants and Individual Defendants throughout 2019 and 2020.  (*Id.* ¶ 79.)  This includes revenue and business opportunities that were either earned by Tri-Coastal Services between February and October 2020, or which were improperly diverted away from Tri-Coastal Services to the other Defendants.  (*Id.* ¶¶ 82–84, 87–88.)[7]

---

[7] Defendant Marvin Stutz also took steps to transfer or divert his own personal assets in a manner designed to frustrate Plaintiff's ability to collect from him as he is a named defendant in the Breach Litigation.  (ECF No. 1 ¶¶ 108, 111.)

Finally, Plaintiff alleged more than sufficient facts to support the plausible inference that Defendants transferred these assets with the requisite intent to defraud, delay, or hinder Plaintiff.  "Because debtors rarely admit fraudulent intent, courts must usually infer it.  In drawing that inference, courts may consider eleven badges of fraud set forth in the [NJUFTA]." *MSKP Oak Grove, LLC v. Venuto*, No. 19-3372, 2020 WL 7496512, at *2 (3d Cir. Dec. 21, 2020) (citing *Gilchinsky*, 159 N.J. at 490 and N.J. Stat. Ann. § 25:2-26(a)-(k)).[8]  "Even one badge of fraud can suffice to 'cast suspicion on the transferror's intent.'"  *Id.* (quoting *Gilchinsky*, 159 N.J. at 490).  This is also a case where the pleading requirements for fraud are relaxed because relevant factual information concerning the transfers are "peculiarly within the defendant's knowledge or control."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418.

---

[8] The badges of fraud listed in the statute are whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.  N.J. Stat. Ann. § 25:2-26(a)-(k).

Despite limited access to information, Plaintiff uncovered and alleged numerous badges of fraud as set forth in the FAC.  These include, but are not limited to:

- With the exception of the transfer to IDBNY, the transfers were to insiders, including the Individual Defendants, Company Defendants, and Fictitious Defendants.  (ECF No. 1 ¶¶ 36, 134.)[9]

- All of the transfers were concealed from Plaintiff at the time they were made.  (*Id.* ¶¶ 36, 38, 62, 66.)

- At the time of the transfers, Defendants either knew that Plaintiff would likely file or had already filed a lawsuit for breach of the lease.  (*Id.* ¶¶ 38, 52, 65, 68.)

- Most of not all of the transfers were made without Tri-Coastal Services receiving anything in return.  (*Id.* ¶¶ 77, 79-80, 84.)

- The transfers included all or substantially all of Tri-Coastal Services' assets, as Defendants have represented that Tri-Coastal Services is now effectively insolvent (which may be a false representation).  (*Id.* ¶¶ 65, 75.)

- The sale to IDBNY occurred after the commencement of the Breach Litigation, and days before the Consent Judgment.  (*Id.* ¶ 69.)

These allegations, whether taken together or separately, satisfy the pleading requirements for a fraudulent transfer claim under the NJUFTA.

---

[9] The NJUFTA does not define insiders when the debtor is a limited liability company, as is the case here, but does provide that affiliates and managing agents are insiders.  N.J. Stat. Ann. § 25:2-22.  As alleged, the Individual Defendants held themselves out as managing agents of Tri-Coastal Services and the Company Defendants are affiliates managed by the same persons.  (ECF No. 1 ¶¶ 8, 10–12.) These parties are therefore insiders for purposes of the NJUFTA.

Defendants argue that Plaintiff's fraudulent conveyance claim is based on the "specious inference that [Tri-Coastal Services] earned any revenue from outside sources and had any assets." (ECF No. 5-1 at 13-14.) In what will become a recurring theme, Defendants premise their argument on speculative statements that are not contained in the FAC. For example, Defendants assert the loan from IDBNY was the "sole source of funds" for Tri-Coastal Services based on a single corporate balance sheet attached to their motion. (*Id.* at 13.) This sort of selective, hand-picked evidence from outside the four corners of the pleading must be disregarded on a motion to dismiss. *Mayer*, 605 F.3d at 230; *see also Wilson v. Parker*, No. 18-2954, 2018 WL 6696783, at *4 (D.N.J. Dec. 20, 2018) (denying motion to dismiss NJUFTA claim where motion relied "exclusively" on emails not cited in the complaint that allegedly showed the fraudulent transfer did not occur); *Debiasa*, 2016 WL 4620370, at *3 (refusing to consider affidavit and "factual contentions" raised in motion to dismiss NJUFTA claim).

Defendants also focus on the allegations related to the IDBNY transfer while generally overlooking the balance of the allegations concerning other fraudulent transfers. They argue in several places that the transfer to IDBNY was not a fraudulent conveyance given the structure of the loan. (ECF No. 5-1 at 14–15, 16–17.) Their theory appears to be that because IDBNY had an "absolute right" to foreclose on assets belonging to Defendants, the transfer could not have been a

19

fraudulent conveyance. (*Id.* at 15.)[10]   Again, this suggestion should be disregard because it is based on the selective presentation of evidence from outside of the pleadings when, among other things, Plaintiff has not had the benefit of discovery into the relationship between IDBNY and Defendants.

Moreover, there is nothing about the lender-borrower relationship between IDBNY and Defendants that would preclude Plaintiff's fraudulent conveyance claim. Even assuming that IDBNY had a contractual claim to foreclose on assets belonging to Tri-Coastal Services, this is still a "transfer" for purposes of the NJUFTA. N.J. Stat. Ann. § 25:2-22 (defining "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset").[11]   Because Plaintiff has alleged with particularity that this transfer to IDBNY was made under circumstances suggesting fraud, it has stated a claim for

---

[10] Defendants also argue that the transfer could not have been fraudulent because the original loan agreement apparently preceded the lease. (ECF No. 5-1 at 14.) True to form, this argument is based on evidence from outside the pleadings, including what purports to be a copy of a 2007 loan agreement. In contrast, however, the FAC alleges that the lender/borrower relationship between the Company Defendants and the IDBNY was restated on or about August 24, 2017, well after the lease was entered into. (ECF No. 1 ¶¶ 61, 63). In any event, nothing in the NJUFTA bars a fraudulent conveyance claim when the transfer is made to a creditor with an older claim. All that is required is a transfer made with the requisite intent to defraud, delay, or hinder. N.J. Stat. Ann. § 25:2-25(a).

[11] For the same reason, it is irrelevant whether Defendants wish to characterize the transfer as a "sale" or "foreclosure" under the UCC. (ECF No. 5-1 at 26.)

fraudulent conveyance.   Defendants fail to cite *any* legal authorities that might suggest otherwise.[12]

Defendants next suggest they had no legal obligation to disclose the loan from IDBNY and, for this reason, it was perfectly fine that the loan was concealed.  (ECF No. 5-1 at 15-16.)   But under the NJUFTA, concealing the loan and subsequent transfer is still a badge of fraud regardless of whether the debtor had a legal duty to disclose.  N.J. Stat. Ann. § 25:2-26(c).  Defendants also assert, based on allegations outside of the FAC, that Plaintiff had prior knowledge of the loan.  (ECF No. 5-1 at 16–17.)   There are two things wrong with this claim.   First, nothing in the FAC suggests that Plaintiff knew of the IDBNY loan and, in fact, the FAC specifically states that Plaintiff did not know about the loan because Defendants hid it from Plaintiff.  (ECF No. 1 ¶ 62).   Second, there is no credible evidence that Plaintiff was aware of the loan as Defendants claim.  Defendants merely state in their motion that IDBNY publicly filed liens and signed a letter of credit that Tri-Coastal Services provided to Plaintiff.  (ECF No. 5-1 at 16–17.)   At most, this means Plaintiff may have known that IDBNY provided some type of financing to Tri-Coastal Services—

---

[12] Defendants also ignore that Plaintiff has alleged other fraudulent transfers unrelated to IDBNY, include the transfer of revenue Tri-Coastal Services collected between the fall of 2019 and October 2020.  (ECF No. 1 ¶¶ 79, 82-83.)

a far cry from knowing the terms of the IDBNY loan, its payment status, and related issues.[13]

Finally, Defendants dispute that Tri-Coastal Services retained any assets following the execution of the bill of sale involving IDBNY. (ECF No. 5-1 at 17.) Similarly, they dispute that the Individual Defendants transferred any assets in order to shield them from Plaintiff. (*Id.* at 17–19.) These sorts of pronouncements by Defendants are based on disputed facts outside of the pleadings and should be disregarded. *Wilson*, 2018 WL 6696783, at *4; *Debiasa*, 2016 WL 4620370, at *3.

At the risk of being repetitive, that Defendants deny their wrongful acts does not make those denials so. For instance, the FAC refers to certain assets, defined as the "Excluded Assets," and other assets, defined as the "Soft Assets," that were not given to IDBNY but were instead transferred to the other Defendants. (ECF No. 1 ¶¶ 74-76, 95, 98–106.) Defendants assert (using the "missing facts") that the trust for defendant Marvin Stutz was actually a revocable trust formed in 2010 (*id.* at 18),[14] and the real estate owned by defendant Michael Mastrangelo was never

---

[13] Moreover, the FAC makes clear that one of the material misrepresentations and omissions by Defendants was that they were consulting with outside investors *to obtain additional financing*, which they would use to pay rent and their other obligations to Plaintiff. (ECF No. 1 ¶ 47.) In reality, Defendants did the opposite and apparently consulted with IDBNY to *surrender* assets.

[14] Even if Stutz's attempt to shield assets was apparently ineffective under California or New Jersey law because the assets were allegedly placed in a revocable trust, which is not conceded, does not mean Stutz's actions were not fraudulent.

available to unsecured creditors (*id.* at 19).  In contrast, the FAC alleges that 15 days after Tri-Coastal Services secured the lease amendment with the assistance of material misrepresentations and omissions provided by Stutz, and 13 days before Tri-Coastal Services defaulted under the lease, Stutz executed a Trust Transfer Deed and other real estate documents that were recorded in title, placing his multimillion dollar house into trust in an attempt to place it outside of Plaintiff's reach.  (ECF No. 1 ¶¶ 107–11).  The FAC also alleges that the IDBNY had a mortgage over real property owned by the wife of defendant Michael Mastrangelo (where he lives) that, as a result of the transaction with the IDBNY, the IDBNY discharged the mortgage of record as well as other mortgages in place over real property owned by other Individual Defendants.  (*Id.* ¶¶ 112–19.)

## III.   Plaintiff Adequately Alleges a Fraud Claim

In Count 2, Plaintiff alleged that Defendants made false and misleading statements as to material facts and omissions and are therefore liable for fraud.  (ECF No. 1 ¶ 139–42.)  The Count incorporates all prior allegations in the FAC.  (*Id.* ¶ 139.)  These fraudulent statements related to, among other things, "the Lease, Lease Amendment, rent owed, intention to repay Plaintiff, their occupancy of the property, assets, transfers of assets, [and] solvency of Tri-Coastal Services." (*Id.*) Plaintiff relied on these statements to its detriment and was damaged.  (*Id.* ¶¶ 141–42.)

Plaintiff's allegations plausibly state a claim for fraud under New Jersey law. "[A] common-law fraud action has five elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Angrisani v. Capital Access Network, Inc.*, 175 F. App'x 554, 556 (3d Cir. 2006) (citing *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 584 (1997)).  Each element was alleged here.

To begin, Plaintiff alleged several false statements, misrepresentations, and omissions (element one), including that:

- Tri-Coastal Services, Marvin Stutz, and Dennis Mastrangelo "represented to [Plaintiff] that if [Plaintiff] agreed to modify the terms of the Lease, that Tri-Coastal Services would timely remit rent and its other financial obligations to [Plaintiff]."  (ECF No. 1 ¶ 31.)

- Tri-Coastal Services and Marvin Stutz "represented to [Plaintiff] in the Breach Litigation that Tri-Coastal Services was effectively defunct and insolvent."  (*Id.* ¶ 39.)

- Tri-Coastal Services, Marvin Stutz, and Dennis Mastrangelo "made various promises" to Plaintiff between February 2020 and June 2020 to the effect that "they would ensure [Plaintiff] was paid for the rent and other charges Tri-Coastal Services owed under the Lease." (*Id.* ¶ 47.)  For example, these parties represented to Plaintiff that Tri-Coastal Services' "business difficulties were only temporary in nature," that Tri-Coastal Services had arranged for "outside investors" and financing, and that Tri-Coastal Services had "applied for a government loan to provide financing."  (*Id.*)

Each of these false statements, misrepresentations, and omissions were made with the "approval and participation" of all Defendants.  (*Id.* ¶¶ 31, 39, 47.)

24

Plaintiff also alleged that these false statements, misrepresentations, and omissions were "knowingly made" (element two) with the intent "that Plaintiff would rely thereon and be harmed" (element three). (*Id.* ¶ 140.) Defendants' purpose was, among other reasons, to convince Plaintiff to delay filing suit against Tri-Coastal Services so that Defendants could continue their scheme to divert revenue and assets away from Tri-Coastal Services. (*Id.* ¶ 50.) Finally, Plaintiff alleged that it reasonably relied on (element four) and incurred damages as a result of (element five) the false statements, misrepresentations, and omissions. (*Id.* ¶ 141–42.) These damages include the unpaid Consent Judgment and other obligations that Defendants worked in concert to avoid paying.

Defendants argue that "Plaintiff didn't rely on any supposed statements." (ECF No. 5-1 at 23.) This argument is baffling, as Defendants admit that Plaintiff specifically alleged reliance when agreeing to modify the terms of the lease and when deciding to delay filing suit against Tri-Coastal Services. (*Id.*; *see also* ECF No. 1 ¶ 32 ("Relying on the representations … [Plaintiff] agreed to modify the Original Lease.").) Defendants also bizarrely suggest the steps Plaintiff took in reliance on the false statements, misrepresentations, and omissions "resulted in a reduction of potential damages." (ECF No. 5-1 at 23.) They did not. These decisions resulted in giving Defendants additional time to transfer, collect and conceal the revenue and assets of Tri-Coastal Services, which furthered damaged

Plaintiff.  And in any event, all that matters for purposes of a motion to dismiss is that Plaintiff has plausibly alleged the damages element of its fraud claim. Defendants may think these damages are speculative and are free to raise (and lose) this argument at summary judgment or trial.[15]

Defendants next claim the allegations they "hid information" relating to IDBNY and the subletting of the property do not "give rise to a claim of fraud." (ECF No. 5-1 at 25–26.)  They cite to no authority in support and regardless, the "'[d]eliberate suppression of a material fact that should be disclosed' is viewed as 'equivalent to a material misrepresentation (i.e., an affirmative misrepresentation),' which will support a common law fraud action."  *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 607 (D.N.J. 2014) (quoting *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009)).  As noted above, Defendants were actively misrepresenting to Plaintiff that they were seeking additional financing to use to pay rent and rent arears at the very time they were instead surreptitiously seeking to surrender assets to IDBNY which in part benefitted the Individual Defendants personally.  (ECF No. 1 ¶¶ 47, 60–77.)  Moreover, Defendants overlook that Plaintiff's fraud claim is based on numerous false statements and misrepresentations

---

[15] Along these same lines, Defendants suggest that Plaintiff was not damaged when the FAC is "combined with missing facts."  (ECF No. 5-1 at 23.)  To state this argument is to refute it, as the Court cannot consider these supposed "missing facts" on a motion to dismiss.  *Mayer*, 605 F.3d at 230.

that are entirely unrelated to IDBNY and the use of the property by other companies. (*E.g.*, ECF No. 1 ¶¶ 31, 39, 47.)  Even one of these is sufficient to support Plaintiff's claim for fraud.[16]

Finally, Defendants argue that the fraud allegations are "based upon a specious inference that [Tri-Coastal Services] earned any outside revenue and had any assets." (ECF No. 5-1 at 27–28.)  As before, Defendants are relying on disputed facts regarding Tri-Coastal Services that have no relevance on a motion to dismiss. *Mayer*, 605 F.3d at 230.  And it is apparent that Tri-Coastal Services had, at one time, revenue and assets and business opportunities that could have been used to satisfy Tri-Coastal Services' obligations to Plaintiff, including the Consent Judgment.  Now, the revenue, assets, and business opportunities have been transferred by Defendants away from Tri-Coastal Services, and Plaintiff has alleged that they were transferred to other entities while Defendants made false statements, misrepresentations, and omissions designed to harm Plaintiff and maximize their scheme.  These allegations are sufficient to state a claim for fraud.

---

[16] Defendants also claim that their conduct related to the sublease would amount to a breach of contract claim, such that Plaintiff cannot pursue tort damages for fraud. (ECF No. 5-1 at 26.)  But there was no contract between Plaintiff and the Company Defendants who impermissibly used the property and this is not a case where Plaintiff's fraud damages are contractual in nature.

## IV.    Plaintiff Adequately Alleges an Unjust Enrichment Claim

In Count 3, Plaintiff alleges that Defendants have been unjustly enriched at Plaintiff's expense.  (ECF No. 1 ¶¶ 143–47.)  The Count incorporates all prior allegations in the FAC.  (*Id.* ¶ 143.)  To state a claim for unjust enrichment, a plaintiff must allege "that (1) at plaintiffs expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (quoting *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011)).  "At the pleading stage, a plaintiff 'need only allege facts sufficient to show: 1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust.'" *Id.* (quoting *Palmeri v. LG Elecs. USA, Inc.*, No. 07-5706, 2008 WL 2945985, *5 (D.N.J. July 30, 2008)).

Plaintiff alleged each of these elements here.  In particular, Plaintiff conferred a benefit on Defendants—the use of the property by the Company Defendants—without compensation.  (ECF No. 1 ¶¶ 40–43, 144.)  And it goes without saying that denying recovery would be unjust when a company secretly sublets and operates its business out of a commercial property without paying rent to the landlord.

Defendants argue that Plaintiff is actually just alleging breach of contract, which cannot be pled alongside a claim for unjust enrichment.  (ECF No. 5-1 at 29,

31.)[17]  But Plaintiff is *not* alleging breach of contract in this action.  Moreover, with the exception of Tri-Coastal Services, Defendants were not parties to the lease.  Even if Tri-Coastal Services breached the terms of the lease, it was Defendants that benefitted from the improper use of the property and Plaintiff's primary recourse against these parties is an unjust enrichment claim.  Plaintiff is also permitted to plead in the alternative.  *USI Int'l, Inc. v. Festo Didactic, Inc.*, No. 15-8451, 2016 WL 4487858, at *2 (D.N.J. Aug. 24, 2016).

Defendants next claim that Plaintiff did not confer a benefit on Defendants because Defendants' improper use of the property was a "license arrangement" as opposed to a "sublease."  (ECF No. 5-1 at 29–30.)  Preliminarily, that is an interesting untested claim, but one that clearly falls outside of the FAC.  Moreover, it is irrelevant whether Defendants use of the property was a "sublease" or "license" so long as Defendants received a benefit at Plaintiff's expense.[18]  Such a benefit

---

[17] Defendants cite a single inapposite case in support of this argument that applied Pennsylvania law, not New Jersey law.  *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169–70 (3d Cir. 2014).  Defendants also ignore that under New Jersey law a party is free to plead a claim for unjust enrichment as an alternative to breach of contract.  *USI Int'l, Inc. v. Festo Didactic, Inc.*, No. 15-8451, 2016 WL 4487858, at *2 (D.N.J. Aug. 24, 2016).  That is unnecessary here, as Plaintiff is not alleging breach of contract.

[18] Defendants' only support for this cryptic argument is a citation to a federal tax regulation defining "real property."  26 C.F.R. § 1.856-10(f)(2).  This regulation says nothing about what constitutes a "benefit" for purposes of an unjust enrichment claim.

exists here because, as alleged, Defendants used the property to operate their businesses and make money.  (ECF No. 1 ¶ 40–43, 144–45.)

Finally, Defendants posit that Plaintiff did not expect remuneration from Defendants.  (ECF No. 5-1 at 30–31.)  This is another interesting claim, and one that might have legs if Defendants had any actual evidence of having disclosed to Plaintiff that its warehouse was being used by persons and entities other than the tenant Tri-Coastal Services, and that Plaintiff consented to such use.  But such a claim is not part of the FAC and unprovable, as it is not true.  As alleged, Defendants used commercial property Plaintiff owned without paying Plaintiff for that use. (ECF No. 1 ¶¶ 40–43, 144–45.)  It is reasonable to infer from these allegations that Plaintiff expected Defendants to pay for their use of the property.  Put simply, a landlord expects to be paid when parties use commercial property to conduct business and profit.  This is precisely why the lease included a provision barring Tri-Coastal Services from subletting the property without Plaintiff's permission.  (*Id.* ¶ 40.)

## V.     Plaintiff Adequately Alleges a Consumer Fraud Claim

In Count 4, Plaintiff alleged that Defendants violated the New Jersey Consumer Fraud Act ("NJCFA") by engaging in unconscionable commercial practices.  (ECF No. 1 ¶¶ 148–52.)  The Count incorporates all prior allegations in

the FAC.  (*Id.* ¶ 148.)  Plaintiff's allegations support a plausible claim of consumer

fraud.  The NJCFA provides in relevant part that:

> [t]he act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing, concealment, suppression, or
> omission of any material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with the sale or
> advertisement of any merchandise or real estate, or with the subsequent
> performance of such person as aforesaid, whether or not any person has
> in fact been misled, deceived or damaged thereby, is declared to be an
> unlawful practice.

N.J. Stat. Ann. § 56:8-2.  As already discussed, Defendants made numerous material

misrepresentations and omissions in connection with the lease, took steps to

wrongfully evade the financial obligations associated with the lease, and operated

businesses on the property in violation of the terms of the lease.  (*E.g.*, *id.* ¶¶ 47–50,

62–66, 79–84.)

New Jersey courts have repeatedly made clear that the NJCFA as a remedial

statute is to be interpreted broadly to give it the broadest possible effect.  *Gennari v.*

*Weichert Co. Realtors*, 288 N.J. Super. 504, 533 (App. Div. 1996), *aff'd*, 148 N.J.

582 (1997); *Hampton Hosp. v. Bresan*, 288 N.J. Super. 372, 378 (App. Div. 1996).

In contrast, Defendants' arguments in this motion represent a crabbed and inaccurate

reading of the NJCFA's scope and effect.

Defendants claim the NJCFA does not apply because the parties are

"sophisticated merchants" and Plaintiff is not a "consumer[]."  (ECF No. 5-1 at 32–

33.)  Defendants' research on the issue appears limited to the Webster's Dictionary meaning of "consumer," and is wrong.  First, a "person" within the meaning of the NJCFA is defined to include business entities.  *See* N.J.S.A. 56:8-1(d).[19]  Second, the New Jersey Supreme Court has held that, "it is well established that the [NJCFA] is applicable to commercial transactions." *All the Way Towing, LLC v. Bucks Cty. Int'l, Inc.*, 236 N.J. 431, 443 (2019).  To determine whether a particular commercial transaction is covered, courts apply a multi-factor test, considering: "(1) the complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior transactions between the parties; and (4) the public availability of the subject merchandise." *Id.* at 447–48.

Defendants fail to address these factors and have not established that the leasehold relationship here is categorically exempt from the NJCFA.  In reality, Plaintiff has pled sufficient allegations documenting a systematic and pervasive

---

[19] For this reason, it is misleading at best for Defendants to claim that "only consumers have standing to sue under the [NJCFA]."  (ECF No. 5-1 at 33.)  On this point, Defendants cite a single inapposite case that concluded that a competitor did not have standing to sue its competition.  *IDT Telecom, Inc. v. CVT Prepaid Sols., Inc.*, No. 07-1076, 2009 WL 5205968, at *6 (D.N.J. Dec. 28, 2009).

attempt by Defendants to mislead Plaintiff and for pleading purposes such conduct suffices to establish the elements of a NJCFA violation, that Defendants' conduct was an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that [Plaintiff] rely upon such concealment, suppression or omission" to its detriment.  N.J. Stat. Ann. § 56:8-2.

Moreover, the application of these factors under the NJCFA "presents factual issues that exceed the scope of a motion to dismiss." *Reckitt Benckiser LLC v. Cotiviti, LLC*, No. 16-729, 2016 WL 5791410, at *4 (D.N.J. Oct. 3, 2016). Accordingly, the issue of whether the transaction between Plaintiff and Tri-Coastal Services "falls within the scope of the NJCFA 'is better left for summary judgment or trial.'" *Premier Health Assocs., LLC v. Med. Tech. Sols.*, No. 17-331, 2018 WL 4043289, at *4 (D.N.J. Aug. 24, 2018) (quoting *Hatteras Press, Inc. v. Avanti Comput. Sys. Ltd.* No. 16-5420, 2017 WL 2838349, at *3 (D.N.J. June 30, 2017)).

## VI.    Plaintiff Adequately Alleges a Civil Conspiracy Claim

In Count 5, Plaintiff alleged that Defendants are liable for civil conspiracy. (ECF No. 1 ¶¶ 153–56.)  The Count incorporates all prior allegations in the FAC. (*Id.* ¶ 153.)   This claim involves four elements under New Jersey law: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to

be achieved by unlawful means; and (4) proof of special damages." *Morganroth &*
*Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir.
2003).

As alleged, Defendants agreed to and pursued a common plan to injure
Plaintiff for their own gain. (ECF No. 1 ¶¶ 153–56.) The evidence of this conspiracy
pervades the FAC. Defendants operated numerous businesses on the property
without compensating Plaintiff and in violation of the terms of the lease. (*Id.* ¶¶ 36,
40–43.) Defendants diverted revenue, assets and business opportunities from Tri-
Coastal Services in order to limit Plaintiff's ability to collect on Tri-Coastal
Services' debts to Plaintiff, including the Consent Judgment. (*Id.* ¶¶ 62–66, 79–84.)
Defendants made various false statements, misrepresentations and omissions in
order to buy themselves additional time and convince Plaintiff that Tri-Coastal
Services was defunct and unable to satisfy the Consent Judgment. (*Id.* ¶¶ 47–50.)
Each of these steps were taken with the agreement, participation, and knowledge of
Defendants. (*E.g.*, *id.* ¶¶ 36, 42, 45–46, 79–80 (allegations of actions taken with
"the approval and participation of all Defendants").)

Defendants first argue that Plaintiff failed to allege an unlawful purpose or
lawful purpose achieved by unlawful means. (ECF No. 5-1 at 33–34.) But this
argument is premised on the incorrect assertion that Plaintiff failed to state claims
for fraudulent conveyance, fraud, unjust enrichment, and a violation of the NJCFA.

34

As demonstrated above, Plaintiff has adequately pled each of these claims. *Supra* at 14-33.

Defendants next suggest the conspiracy claim is barred by the intra-corporate conspiracy doctrine. (ECF No. 5-1 at 34–35.) It is not. The doctrine provides that employees generally cannot conspire with their corporate employer. *World Express & Connection, Inc. v. Crocus Invs., LLC*, No. 15-8126, 2020 WL 5088633, at *20 (D.N.J. Aug. 28, 2020). Similarly, "individual agents, officers, or employees of a corporation, acting in their representative capacities cannot conspire among themselves." *Id.* These same parties can, however, conspire among themselves when acting in their individual capacities. *Id.*

The intra-corporate doctrine has no application here because Plaintiff has not alleged a conspiracy between a corporation and its representatives or a conspiracy among the representations of a corporation. Plaintiff alleged a conspiracy among *all* of the defendants in this case, including several individuals, limited liability companies, and for-profit corporations. (ECF No. 1 ¶¶ 2–14, 153–56.) In other words, this case involves an *inter*-corporate conspiracy and it is therefore irrelevant whether certain defendants acted in their "personal" or "representative" capacity. *See King's Choice Neckwear, Inc. v. Fedex Corp.*, No. 07-0275, 2007 WL 4554220, at *4 (D.N.J. Dec. 21, 2007) ("This matter does not involve an 'intra-corporate'

conspiracy between a corporation and its employees, but rather an 'inter-corporate' conspiracy between two distinct corporate entities ….").[20]

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss (ECF No. 5) should be denied.

ATTORNEYS FOR PLAINTIFF
WHARTON LH LP

By:  */s/ C. John DeSimone, III*
C. John DeSimone, III, Esq.
Stephen R. Catanzaro, Esq.
DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ 07054
(973) 966-6300
cjdesimone@daypitney.com
scatanzaro@daypitney.com

Dated: January 19, 2021

---

[20] And even if the doctrine applied, it is plausibly alleged that the Individual Defendants did not observe corporate formalities and were acting in their individual, as opposed to representative, capacities in order to shield their own personal assets and the assets of the Company Defendants and Fictitious Defendants exclusive of Tri-Coastal Services.  (ECF No. 1 ¶¶ 22, 48, 50, 51, 84, 87.)

36